DYK, Circuit Judge,
dissenting.
I agree with the majority’s decision to reverse the willfulness finding. However, I respectfully dissent from the majority’s decision to affirm the construction of claim 20. In my view, the majority’s construction is plainly incorrect, and the resulting infringement findings as to claim 20 as well as claims 22 and 38, which depend from and recite the same apparatus as claim 20, should be set aside.
Claim 20 recites a “processing means comprising means determining movement of said patient from digital image signals, including movement associated with breathing by said patient.” '554 patent col. 10 ll. 46-49. The parties do not dispute that claim 20 is a means-plus-function claim governed by 35 U.S.C. § 112(f). In construing functional claim language, the first step is to “‘determine the claimed function’ ” and the second is to “ ‘identify the corresponding structure in the written description of the patent that performs the function.’ ” Noah Sys., Inc. v. Intuit Inc., 675 F.3d 1302, 1311 (Fed.Cir.2012) (quoting Applied Med. Res. Corp. v. U.S. Surgical Corp., 448 F.3d 1324, 1332 (Fed.Cir.2006)). The corresponding structure must be “ ‘capable of performing the claimed function’ ” and “ ‘[tjhe specification must be read as a whole to determine’ ” what that structure is. Default Proof Credit Card Sys., Inc. v. Home Depot U.S.A., Inc., 412 F.3d 1291, 1298 (Fed.Cir.2005) (quoting Budde v. Harley-Davidson, Inc., 250 F.3d 1369, 1379 (Fed.Cir.2001)). Accordingly, the proper construction “must include all structure that actually performs the recited function.” Id. (citing Cardiac Pacemakers, Inc. v. St. Jude Med., Inc., 296 F.3d 1106, 1119 (Fed.Cir.2002)).
*952 Here, because the claimed function is implemented by a “processing means,” i.e., a computer, the specification must “‘disclose an algorithm for performing the claimed function.’ ” Noah, 675 F.3d at 1302, 1312 (quoting Net MoneyIN, Inc. v. VeriSign, Inc., 545 F.3d 1359, 1367 (Fed.Cir.2008)); see also Aristrocrat Techs. Austl. Pty Ltd. v. Int’l Game Tech., 521 F.3d 1328, 1333 (Fed.Cir.2008). The algorithm may be disclosed “ ‘in any understandable terms including as a mathematical formula, in prose, or as a flow chart, or in any other manner that provides sufficient structure.’ ” Noah, 675 F.3d at 1312 (quoting Finisar Corp. v. DirecTV Grp., Inc., 523 F.3d 1323, 1340 (Fed.Cir.2008) (internal citation omitted in original)). As the majority concludes, the algorithm “need only include what is necessary to perform the claimed function.” Maj. Op. 941 (citing Wenger Mfg., Inc. v. Coating Mach. Sys., Inc., 239 F.3d 1225, 1233 (Fed.Cir.2001)). Contrary to the majority, what is “necessary” is not what is in theory “necessary” to perform the function. Rather, the structure must include what the specification discloses as “necessary” to perform the function. See Harris Corp. v. Ericsson Inc., 417 F.3d 1241 (Fed.Cir.2005) (discussed below).
The district court correctly identified the function as “determining movement of the patient from the digital image signals of the patient, including movement associated with breathing by the patient.” Maj. Op. 940 (quoting Special Master Report at 18-19). But the district court and the majority on appeal incorrectly identify the structure for performing that function as a two-step algorithm. Those two steps do not accomplish the claimed function of determining a patient’s movement. Rather, the specification describes additional steps that are necessary to accomplish that function. The construction must include those steps as well.
The majority’s identification of structure — the two steps of detecting and tracking fiducials — relies on a single statement in the specification that “[a]s will be discussed fully, the patient motion detector 47 detects and identifies the fiducials 39 and then tracks their movement.” Maj. Op. 941 (quoting '554 patent col. 4 11. 21-23). The majority concludes that this disclosure identifies the corresponding structure as a two-step algorithm because the specification “links this algorithm to the function of determining patient movement.” Id. But the statement in the specification does not explain how the fiducials are detected and tracked or how performing those steps accomplishes the function of determining a patient’s movement during radiation treatment.
Other portions of the '554 patent’s specification describe how the claimed “invention” determines patient movement using fiducials:
Detection of motion of a patient using passive fiducials requires an implementation which is robust enough to accommodate for the variations in the shapes, appearance and lighting conditions to which the fiducials are subjected and, at the same time, is fast enough to provide real time tracking of patient movement. The invention satisfies these requirements by utilization of successive levels of filtering and templates which are modified to accommodate for actual conditions. The result is a system which can track patient movement at 20 Hz or better.
'554 patent col. 5 ll. 4-13 (emphasis added). The invention must accommodate variation among fiducials because it can use either natural fiducials (such as scars) or artificial fiducials (such as plastic marker-blocks). As a result, the fiducials may not all look the same. The determination *953 of what the fiducials are must occur before the fiducials can be tracked. To do this, “templates are used to identify the locations of the fiducials. The templates indicate what the pattern of digital signals representing the fiducial should look like.” Id. col. 5 11. 41-46. Although “[t]here are several ways in which the templates can be generated,” id. col. 5 ll. 49-50, “[o]ne template is used for each family of fiducials.” Id. col. 5. ll. 55-56. Templates are the mechanism through which the fiducials are initially detected and subsequently tracked.
Before the fiducials can be tracked, the templates must be fine tuned. Fine tuning is “[a]n important aspect of the invention” that “adapts the selection of the template to be used for tracking to the actual conditions existing at the time of the selection.” Id. col. 6 11. 63-64 (emphasis added) and col. 7 11. 5-6. Figure 10 illustrates the details of fine tuning, which is “accomplished for each template family.” Id. col. 6 11. 64-65 and col. 7 11. 11-12. The fine-tuning step requires matching each fiducial to the template that will be used to track its movement and recording the fidu-cial’s appearance and initial position. The specification explains that it is only after fine tuning the templates that “[t]he program then enters the tracking loop.” Id. col. 7 11. 4-14; see also id. col. 5 11. 19-23.
Even after the fiducials have been tracked, the patient’s movement cannot be determined. The specification explains that after tracking:
The direction and distance traveled by each currently actively tracked fiducial since the detection step is estimated at 201. The special pattern of the actively tracked fiducials is compared with the initial pattern and previous patterns at 202. Any quasi-periodic motion associated with the individual fiducials and/or the special pattern is predicted at 203 such as by using past data analysis. This would include movement associated with breathing or tremor of the patient.
Id. col. 8 ll. 8-17. This final step is when the claimed function — determining patient movement, including movement associated with breathing — is accomplished. It does not occur before this final step.
The majority concludes that “[w]hile those steps are described in the written description, they are not required.” Maj. Op. 941. This is inconsistent with the specification in two respects. First, that conclusion ignores the detailed description in the specification quoted above and the flow chart in figure 6. Figure 6 is the only depiction of the necessary steps; it is not an alternative implementation, as the majority suggests. See Maj. Op. 941. The specification states that “FIGS. 6-16 are flow charts of software used in implementation of the invention,” '554 patent col. 2 11. 41-42 (emphasis added), and that “FIG. 6 illustrates the main routine of the software 100.” Id. col. 5 ll. 15-16 (emphasis added). The flow charts in figures 7-16 illustrate the steps shown in figure 6 in greater detail, but none of them encompasses the function of determining patient movement as figure 6 does.
Figure 6 requires “detecting fiducials on the patient’s body [ ] in the current camera image at 110,” which “is accomplished utilizing templates.” Id. col. 5 ll. 15-19. “The templates are then fine tuned at 120 for the specific patient and environmental conditions.” Id. col. 5 ll. 19-20. After fine tuning, “a loop is entered in which each individual fiducial is tracked as indicated at 140.” Id. col. 5 ll. 21-23. After tracking, “[t]he direction and distance traveled by each currently actively tracked fiducial ... is estimated at 201” and “[t]he special pattern of the actively tracked fiducials is compared with the initial pattern and previous patterns.” Id. col. 8 ll. 8-12. Only *954 then is it possible to predict “quasi-periodic motion associated with the individual fiducials ... includ[ing] movement associated with breathing or tremor of the patient.” Id. col. 8 ll. 13-17. The steps of (1) detecting fiducials, (2) fine tuning templates, (3) tracking fiducials, and (4) comparing the recorded spatial patterns are not optional — they are required to perform the function of determining patient movement.
Second, the additional steps were included because they were necessary to distinguish the prior art. The prior art used markings to track a patient’s movement during radiation treatment more than ten years before the '554 patent’s priority date. In the initial office action rejecting the application that issued as the '554 patent, the examiner cited U.S. Patent No. 5,446,548, which disclosed “camera means 130, 160, passive fiducials 111-114, and processing means 200” as part of a “position/movement detection system subsidiary to the main (treatment) system.” Examiner’s Initial Rejection of Patent Application at 4, 5, Ser. No. 08/715,835, (P.T.O. Feb. 28, 1997). The examiner also identified three other prior art references — U.S. Patent Nos. 5,295,483; 5,558,430; and 5,389,-101-disclosing “[pjlural cameras used to track patient position in conjunction with camera — identifiable fiducials.” Id. at 5. The application for the '554 patent included the additional steps, described above, to distinguish the abundance of prior art. Claim 20 cannot be construed broadly to cover all methods of determining patient movement by tracking markings that are visible on a patient.
The majority relies on Harris Corp. v. Ericsson Inc., 417 F.3d 1241 (Fed.Cir.2005) to support its exclusion of required steps described by the specification on the ground that the claimed function does not require them. See Maj. Op. 941-42. In Harris, the question was whether to construe the structure corresponding to the claimed “time domain processing means” as a one- or two-step algorithm. 417 F.3d at 1254. The court reached the conclusion opposite to the majority here, and “rejected] [the patentee’s] argument that the disclosed algorithm is broad enough to literally encompass one-step processes.” Id. at 1254. The court explained that the specification “characterize[d] the two-step process as ‘the invention,’ not merely an implementation of the invention.” Id. (citing U.S. Patent No. 4,365,338 col. 5 ll. 50-55 and col. 7 ll. 18-27 (describing “functions implemented by way of processor 37” and “employed in accordance with the invention”)). As a result, a one-step process could not constitute the corresponding structure.
Far from supporting the majority’s approach, Harris demonstrates the majority’s error. In Harris, we explained that “Figure 9 illustrates how th[e] algorithm is implemented” and relied on that figure in construing the algorithm as a two-step procedure. Id. Here, “FIG. 6 illustrates the main routine of the software.” '554 patent col. 5 11. 15-16. As in Harris, the additional steps are characterized as the “invention,” not merely an implementation. See also, e.g., '554 patent col. 6 11. 63-64 (“An important aspect of the invention is the fine tuning of the tracking templates called for at 120 in FIG. 6.”); id. col. 5 11. 9-12 (“The invention satisfies these requirements by utilization of successive levels of filtering and templates which are modified to accommodate for actual conditions.”). The structure for determining patient movement must be a four-step process that includes those steps.
I respectfully dissent from the majority’s affirmance of the district court’s construction of claim 20. Because Varian’s system does not use templates to detect or *955 track fiducials, does not fine tune templates, and does not compare recorded spatial patterns of fiducials, it appears not to infringe. I would vacate the findings of infringement as to claims 20, 22 and 38, and remand for a determination of infringement under the correct claim construction.