**In re Olaf H. DOSSEL and Walter H. Kullmann.**

No. 96–1340.

United States Court of Appeals, Federal Circuit.

May 27, 1997.

Jack D. Slobod, U.S. Philips Corporation, Tarrytown, NY, argued, for appellant. With him on the brief were Jack E. Haken and Algy Tamoshunas.

Karen A. Buchanan, Associate Solicitor, U.S. Patent and Trademark Office, Arlington, VA, argued, for appellee. With her on the brief were Nancy J. Linck, Solicitor and Albin F. Drost, Deputy Solicitor.

Before PLAGER, RADER and SCHALL, Circuit Judges.

Opinion for the court filed by Circuit Judge PLAGER. Circuit Judge RADER concurs in the result.

PLAGER, Circuit Judge.

This appeal from the U.S. Patent and Trademark Office ("PTO") is about the relationship between paragraphs 1, 2, and 6 of 35 U.S.C. § 112, and how these paragraphs bear on the analysis of means-plus-function claims contained in appellants Dossel and Kullmann's (collectively "Dossel") 07/543,600 ("'600") application for patent. The examiner, the Board of Patent Appeals and Interferences ("BPAI" or "Board"), the PTO Solicitor, representing the Commissioner, and appellants have differing views on the ques-

tion. We conclude that on the ground on which the Board rejected appellant's claims, it erred. We vacate and remand.

## BACKGROUND

Section 112 ¶ 1 states:

The specification shall contain a written description of the invention, and of the manner and process of making and using it, in such full, clear, concise, and exact terms as to enable any person skilled in the art to which it pertains, or with which it is most nearly connected, to make and use the same, and shall set forth the best mode contemplated by the inventor of carrying out his invention.

Section 112 ¶ 2 states:

The specification shall conclude with one or more claims particularly pointing out and distinctly claiming the subject matter which the applicant regards as his invention.

Section 112 ¶ 6 states:

An element in a claim for a combination may be expressed as a means or step for performing a specified function without the recital of structure, material, or acts in support thereof, and such claim shall be construed to cover the corresponding structure, material, or acts described in the specification and equivalents thereof.

The claimed invention relates to a device for reconstructing the spatial current distribution in a biological object, such as a patient's head or brain, within which object volume elements exhibit current distributions produced by current sources in the object. When used on a patient, the invention has the ability to measure magnetic flux density outside of the patient's head. This flux density, initially measured in analog units, is converted to digital words with the help of an analog-to-digital converter. The digital words are then fed, along with data representing volume elements on the relevant surfaces on the patient's brain, such as tumors, into what the claims refer to as either a "means for reconstructing the current distributions," or "reconstruction means for determining the current distributions." This reconstruction means, or means for re-

construction, accounts for the volume elements and correspondingly reconstructs the current distributions. The new distributions are displayed visually.

Although the Board rejected other claims contained in Dossel's application as well, only the rejection of claims 8 and 9 of the '600 application is before us on appeal. Claim 8 reads:

A device for reconstructing spatial current distributions in a biological object within which object volume elements exhibit current distributions produced by current sources in said object, it being presumed that said current sources are present on surfaces inside of the morphological structure of the object, said device comprising:

means for specifying a representation which contains the morphological structure of said object at said surfaces on which the current sources are presumed present;

means for measuring at a plurality of points outside the object the values of at least one component of the magnetic fields produced by respective ones of said current sources within the object manifesting said surfaces; and

means for reconstructing the current distributions of the volume elements which are situated on said surfaces on the basis of said measured values.

Claim 9 reads:

A device for reconstructing the spatial current distributions in a biological object having a morphological structure within which object volume elements exhibit current distributions produced by current sources in said object, it being presumed that said current sources are present on specified surfaces inside of the morphological structure of the object, said device comprising:

measuring means for determining values of magnetic flux density produced by said presumed current sources outside said object;

memory means for storing said determined flux density values;

means for determining the volume locations of the elements which are on said specified surfaces inside said object; and

reconstruction means for determining the current distributions at said predetermined volume locations from said stored values.

The examiner rejected claims 8 and 9 under 35 U.S.C. §§ 101 (inventions patentable) and 102(b) (conditions for patentability). Dossel appealed to the Board. In its reconsideration decision, affirming its initial decision, the Board reversed and entered a new ground of rejection under 35 U.S.C. § 112 ¶ 2. Understanding the claims at issue to be means-plus-function claims authorized by § 112 ¶ 6, the Board stated that the issue is "whether appellants' specification discloses any specific structure or hardware that may be regarded as being 'corresponding structure' under 35 U.S.C. § 112 ¶ 6." Concluding that the specification lacked a disclosure of any "corresponding structure" necessary to make a determination of "equivalents" and hence a determination of the scope of the means-plus-function limitations, the Board rejected the claims at issue, citing § 112 ¶ 2, the requirement for claims.

Dossel appeals to this court, arguing that, with regard to means-plus-function claims, no rejection can be made based on § 112 ¶ 2 without first determining the adequacy of disclosure in the written description part of the specification under § 112 ¶ 1. The Solicitor, agreeing with Dossel's construction of § 112 (and disagreeing with the Board's construction), argued for remand so that the Board could properly determine the adequacy of disclosure under § 112 ¶ 1.

## DISCUSSION

▋ The Board's construction of the meaning of 35 U.S.C. § 112 is a question of law that we review independently and anew. *Trent Tube Division, Crucible Materials Corp. v. Avesta Sandvik Tube AB*, 975 F.2d 807, 812 (Fed.Cir.1992). Furthermore, compliance with § 112 ¶ 2 is a question of law. *Miles Labs., Inc. v. Shandon, Inc.*, 997 F.2d 870, 874, 27 USPQ2d 1123, 1125 (Fed.Cir.

1993). We reverse the Board's factual findings only if there is clear error. *In re Caveney*, 761 F.2d 671, 674, 226 USPQ 1, 3 (Fed. Cir.1985).

1.

Our first task is to make clear exactly what is the issue in the case. All agree that the dispute turns on the requirements imposed by § 112 of the Patent Act. The Board, disagreeing with Dossel's view, specifically stated the issue to be whether Dossel had met the requirements of § 112 ¶ 2. On this appeal, Dossel takes the position that, while the question to some extent does involve compliance with § 112 ¶ 2, since the Board had not expressly found a failure to comply with the requirements of § 112 ¶ 1, no valid basis has been stated for rejection of his claims 8 and 9. The Solicitor, seemingly supporting the Board's decision under § 112 ¶ 2, at the same time waffles to the extent of requesting in her response brief that the case be remanded to the Board for further consideration of whether there has been compliance with § 112 ¶ 1.

Initially, then, there seems to be considerable confusion about the meaning of and relationship between paragraphs 1, 2, and 6 of section 112. Part of that confusion may stem from changes in phraseology, intended or not, that have occurred over the years, and that are reflected from time to time both in the literature and in opinions of this court.

We begin with the term "specification," which is the title of § 112. That term appears in the first United States patent statute, the Patent Act of 1790.[1] That Act in § 2 stated that "the grantee ... of each patent shall, at the time of granting the same, deliver to the Secretary of State a specification in writing, containing a description, accompanied with drafts or models, ... which specification shall be so particular ... as not only to distinguish the invention or discovery from other things before known ... but also to enable a workman ... skilled in the art ... to make, construct, or use the same...." A similar requirement was contained in the Patent Act of 1793, but there the term "spec-

---

1.  1 Stat. 109 (1790).

ification" was not used; the inventor was to "deliver a written description of his invention ... in such full, clear, and exact terms, as to distinguish the same." 1 Stat. 318, § 3 (1793). Both "specification" and "written description" were used, somewhat interchangeably, in the Patent Act of 1836.[2] As amended over the years, the Patent Act contained one or the other of the terms, or sometimes both.

In the current version of the Patent Act, in § 112, both terms continue to be used, but with a difference. As noted, the section is entitled "Specification." Paragraph 1 requires a written description of the invention. Paragraph 2 requires that the claims, which follow in order after the written description, shall "particularly point[ ] out and distinctly claim[ ] the subject matter." Paragraph 3 states that a claim "may be written" in independent or dependent or multiple dependent form, and paragraph 4 states what a claim in dependent form "shall contain." Paragraph 5 states what a claim in multiple dependent form "shall contain." And finally, paragraph 6 states that, in a claim, an element for a combination "may be expressed as a means or step for performing a specified function." Of the claim drafting paragraphs, two are permissive; that is they authorize drafters to utilize certain techniques of drafting (paragraphs 3 and 6), and three spell out mandatory requirements (paragraph 2, applicable to all claims, and 4 and 5, which are applicable only to certain types of claims).

Focusing in on paragraphs 1 and 2, paragraph 1 states that "[t]he specification shall contain a written description of the invention ..."; paragraph 2 states that "[t]he specification shall conclude with one or more claims." The statute thus makes clear that under current law the specification of a patent consists of, and contains, both a written description of the invention and the claims.

Modern usage, however, does not always conform to that statutory structure. For example, when discussing the process of claim construction, it is not uncommon for the process to be described as requiring an

examination of the claims, the specification, and the prosecution history, treating them as distinct entities. *See, e.g., Markman v. Westview Instruments, Inc.,* 52 F.3d 967, 979, 34 USPQ2d 1321, 1329 (Fed.Cir.1995) (in banc) ("To ascertain the meaning of claims, we consider three sources: The claims, the specification, and the prosecution history." (quoting *Unique Concepts, Inc. v. Brown,* 939 F.2d 1558, 1561 (Fed.Cir.1991))); *see also Loctite Corp. v. Ultraseal, Ltd.,* 781 F.2d 861, 867, 228 USPQ 90, 93 (Fed.Cir.1985), *Quantum Corp. v. Rodime, PLC,* 65 F.3d 1577, 1580, 36 USPQ2d 1162, 1165 (Fed.Cir.1995). The emphasis in today's law on the centrality of claims has made this a natural enough construct, and the same point might be made, in the terms of the statute, by saying: "[T]o ascertain the meaning of claims, we consider three sources: the claims, the written description, and the prosecution history."

To make the point even clearer, and without changing the terms of the statute, it might be written in the following manner:

§ 112 Specification

(1) Written description. The specification shall contain a written description....

(2) Claims. The written description shall be followed by one or more claims.

(a) A claim shall particularly point out and distinctly claim the subject matter....

(b) A claim may be written in independent or dependent form....

(c) A claim in dependent form shall contain....

(d) A claim in multiple dependent form shall contain....

(e) An element in a claim for a combination may be expressed as a means or step....

■ Section 112 paragraph 6 mandates the manner in which the Commissioner and the courts shall construe the work of a drafter who avails himself of the authority granted by the provision:

---

**2.** 5 Stat. 117 (1836), compare § 6 (inventor shall "deliver a written description") with § 7 ("on the filing of any such application, description, and

specification" the Commissioner shall make an examination ... ).

An element in a claim for a combination may be expressed as a means or step for performing a specified function without the recital of structure, material, or acts in support thereof, *and such claim shall be construed to cover the corresponding structure, material, or acts described in the specification and equivalents thereof.* (Emphasis added.)

Failure to describe adequately the necessary structure, material, or acts in the written description means that the drafter has failed to comply with the mandate of § 112 ¶ 2—(2)(a) in the model above—the mandate that all claims must particularly point out and distinctly claim the subject matter which the applicant regards as his invention. Paragraph 6 of § 112, which permits a claim in means-plus-function form and specifies "such claim shall be construed to cover the corresponding structure, material, or acts described in the specification," does not itself implicate the requirements of § 112 ¶ 1. Paragraph 1 provides the requirements for what must be contained in the written description regardless of whether claims are written in means-plus-function form or not.

Judge Rich, writing for the in banc court in *In re Donaldson Co.,* 16 F.3d 1189, 29 USPQ2d 1845 (Fed.Cir.1994), made precisely this point when he said,

[a]lthough paragraph six statutorily provides that one may use means-plus-function language in a claim, one is still subject to the requirement that a claim "particularly point out and distinctly claim" the invention. Therefore, if one employs means-plus-function language in a claim, one must set forth in the specification an adequate disclosure showing what is meant by that language. If an applicant fails to set forth an adequate disclosure, the applicant has in effect failed to particularly point out and distinctly claim the invention as required by the second paragraph of section 112.

*Id.* at 1195, 16 F.3d 1189, 29 USPQ2d at 1850.

Thus the question in the case before us is not whether there has been compliance with some aspect of § 112 ¶ 1, but whether, in utilizing the authority of § 112 ¶ 6 to claim in means-plus-function form, the drafter has adequately described structure, material, or acts which satisfy the claiming requirement of § 112 ¶ 2.[3] It is to that question we turn.

2.

■ The clause at issue in Claim 8 reads: "means for reconstructing the current distributions of the volume elements which are situated on said surfaces on the basis of said measured values." The clause at issue in Claim 9 reads: "reconstruction means for determining the current distributions at said predetermined volume locations from said stored values." The function named in the means clauses of the claims involves "reconstructing" data, and the question is whether the structure underlying this "reconstructing" function is adequately described in the written description such that the invention is particularly pointed out and distinctly claimed.

Neither the written description nor the claims uses the magic word "computer," nor do they quote computer code that may be used in the invention. Nevertheless, when the written description is combined with claims 8 and 9, the disclosure satisfies the requirements of § 112 ¶ 2. As the written description discloses, the clauses in question claim a device that receives digital data words from a memory and data input from a user. The device then computes, from the received data, the current distribution by mathematical operations including a matrix inversion or pseudo inversion, and then outputs the result to a display. While the written description does not disclose exactly what mathematical algorithm will be used to compute the end result, it does state that "known algorithms" can be used to solve standard equations which are known in the art.

Clearly, a unit which receives digital data, performs complex mathematical computations and outputs the results to a display

---

**3.** Of course, "under proper circumstances, drawings ... may provide a 'written description' of an invention as required by § 112." *Vas–Cath, Inc.* *v. Mahurkar,* 935 F.2d 1555, 1565, 19 USPQ2d 1111, 1118 (Fed.Cir.1991).

must be implemented by or on a general or special purpose computer (although it is not clear why the written description does not simply state "computer" or some equivalent phrase). To bolster this result we note that, in the medical imaging field, it is well within the realm of common experience that computers are used to generate images for display by mathematically processing digital input. Therefore, because of the specific facts in this case, the structure underlying the function recited in Claims 8 and 9 is adequate for us to hold that the requirements of § 112 ¶ 2, that the invention be particularly pointed out and distinctly claimed, are satisfied.

To so hold, however, does not decide whether all other requirements imposed by § 112, or by other sections of the Act, have been met. Given the confusion that surrounded the Board's actions regarding this matter, we vacate the Board's decision and remand the matter for such further proceedings as may be appropriate.

*VACATED AND REMANDED.*